2002-NMCA-026

41 P.3d 940

**Richard A. LEMIRE, on behalf of himself and all other Chaves County residents similarly situated, Plaintiff–Appellant,**

v.

**BOARD OF COMMISSIONERS OF the COUNTY OF CHAVES, Defendant–Appellee.**

No. 21,991.

Court of Appeals of New Mexico.

Jan. 15, 2002.

Certiorari Denied, No. 27,342, Feb. 26, 2002.

R. Trey Arvizu, III, Roswell, NM, for Appellant.

Steven L. Bell, Atwood, Malone, Turner & Sabin, P.A., Roswell, NM, for Appellee.

James W. Bibb, The Anaya Law Firm, P.A., Santa Fe, NM, for Amicus Curiae.

**OPINION**

SUTIN, Judge.

{1} We are met with complex gross receipts tax and revenue bond legislation merging in apparent conflict. Plaintiff Richard A. Lemire sued Defendant Board of Commissioners of the County of Chaves on behalf of himself and all other Chaves County, New Mexico, residents similarly situated [1] to invalidate actions of the County in regard to the dedication of gross receipts tax revenues for the purpose of paying revenue bonds issued to finance the rehabilitation of the Chaves County courthouse. The district court determined that the County acted lawfully and entered judgment in favor of the County. Lemire appeals. We affirm.

**BACKGROUND**

**The Legal Authority to Tax and to Issue Bonds**

{2} The present New Mexico statutory taxing authority is the County Local Option Gross Receipts Taxes Act (Gross Receipts Act), NMSA 1978, §§ 7–20E–1 to –21 (1993,

---

1. No order was entered regarding whether the action was to be maintained under Rule 1–023 NMRA 2001 as a class action.

as amended through 2001). The statutory revenue bond authority is found in NMSA 1978, §§ 4–62–1 to –10 (1992, as amended through 2001).

{3} Counties have had the authority since 1986 to enact ordinances imposing a total of three-eighths of one percent gross receipts tax in three one-eighth increments, denominating these as the first one-eighth, second one-eighth, and third one-eighth increments. *See* NMSA 1978, § 7–20–3(A)–(D) (1986); NMSA 1978, § 7–20–8(A) (1990 Repl. Pamp.) (1986 N.M. Laws, ch. 20, § 87); *see also* § 7–20–3(A) (1992 Cum.Supp.) (1991 N.M. Laws, ch. 212, § 16). The first and third increments are at issue in this appeal.

{4} At all points in time material to this case, counties have been required by statute to put one-fourth of the net receipts from the *first* one-eighth increment into the county's reserve fund, with certain exceptions and conditions subsequent including discretion to transfer those funds under specific circumstances to its general fund, its road fund, or both. *See* § 7–20–8(A)–(D) (1990 Repl. Pamp.), *amended by* § 7–20E–11(A)–(D). The remaining three-fourths of the first one-eighth increment is to be placed into the county's general fund, its road fund, or both. *Id.*

{5} Legislative authority with regard to the use of revenue from the *third* one-eighth increment has changed slightly over the years.[2] The controlling law in this case with respect to the third one-eighth increment is the May 1996 amendment to Section 7–20E–9(D) permitting counties with dedicated revenues for indigent patient purposes to dedicate one-half of that revenue for general purposes. At all points in time material to this case, an ordinance imposing the third one-eighth increment could only be effective upon voter approval. *See* § 7–20–5(D) (1990 Repl. Pamp.) (1986 N.M. Laws, ch. 20, § 85), *amended by* § 7–20E–10(C)(1993 N.M. Laws, ch. 354, § 10), *amended by* § 7–20E–10(C)(1994 N.M. Laws, ch. 101, § 7).

{6} Also at all points in time material to this case, counties have had the authority through its governing body to adopt an ordinance authorizing the issuance of gross receipts tax revenue bonds to, among other things, construct and rehabilitate public buildings, and to "pledge irrevocably any or all of the revenue from the first one-eighth ... and the third one-eighth ... increment[s] of the county gross receipts tax ... for payment of" that bond debt. Section 4–62–1(B); *see also* §§ 4–62–1(A), (B)(1), –4(A). However, the pledged revenues[3] from the

2. As early as 1986, counties imposing a third one-eighth increment were required to dedicate fifty percent for support of indigent patients, although funds not required for indigent patient purposes were permitted to be used for "general purposes." *See* § 7–20–3(D)–(E) (1992 Cum. Supp.). Section 7–20–3 was recompiled in 1993 N.M. Laws, ch. 354, § 9, as Section 7–20E–9. Section 7–20E–9(D) and (E) were left substantially the same as Section 7–20–3(D) and (E). Effective May 15, 1996, the Legislature amended Section 7–20E–9(D) to read, in pertinent part, as follows:

Fifty percent of the revenue produced by the imposition of the third one-eighth increment may be used for general purposes.... Any county that has imposed the second one-eighth increment or the third one-eighth increment, or both, on January 1, 1996 for support of indigent patients in the county or imposes one or both increments after January 1, 1996 shall deposit the revenue from the second one-eighth increment, if enacted and at least one-half of the third one-eighth increment, if enacted in the county indigent hospital claims fund and such revenues shall be expended pursuant to the Indigent Hospital and County Health Care Act.

1996 N.M. Laws, ch. 29, § 1. Effective May 20, 1998, Section 7–20E–9(D) was again amended to read, in pertinent part, as follows:

The revenue produced by the imposition of the third one-eighth increment may be used for general purposes. Any county that has imposed the second one-eighth increment or the third one-eighth increment, or both, on January 1, 1996 for support of indigent patients in the county or after January 1, 1996 imposes the second one-eighth increment or imposes the third one-eighth increment and dedicates one-half of that increment for county indigent patient purposes shall deposit the revenue dedicated for county indigent purposes in the county indigent hospital claims fund and such revenues shall be expended pursuant to the Indigent Hospital and County Health Care Act. 1998 N.M. Laws, ch. 90, § 8.

3. The Legislature did not indicate in the Gross Receipts Act whether any distinction was meant to exist between "net receipts" from the first one-eighth increment, and "revenue" from the third one-eighth increment. *See* §§ 7–20E–11(A), –9(D). "Pledged revenues" is defined to mean "the revenues, net income or net revenues authorized to be pledged to the payment of particular revenue bonds as specifically provided in

gross receipts tax increments cannot be used "for a purpose that would be inconsistent with the purpose for which that county gross receipts tax revenue was dedicated." Section 4–62–4(D). The inconsistent-use prohibition in Section 4–62–4(D) is at the heart of Plaintiff's case.

### The Chaves County Ordinances

{7} The County adopted Ordinance 13 on September 8, 1983, effective January 1, 1984, imposing a one-eighth increment gross receipts tax and dedicating "[a] portion of the revenue collected ... toward a specific purpose or area of county government services ...: operational or capital outlay costs of operations or services provided by the county road department." Chaves County, N.M., Ordinance 13 (Sept. 8, 1983). The tax constituted the County's first one-eighth increment. Ordinance 13 did not dedicate any specific portion of the tax revenue to the County road fund. It did not specifically dedicate any revenue to the County reserve fund.

{8} The County adopted Ordinance 35 on June 25, 1992, effective January 1, 1993, imposing a one-eighth increment tax and dedicating all of its revenue for indigent patients. Chaves County, N.M., Ordinance 35 (June 25, 1992). Ordinance 35 was approved by the voters on August 24, 1992. The tax constituted the County's third one-eighth increment. Ordinance 35 was amended on June 12, 1996, to dedicate one-half of the tax to the County general fund for general purposes, as permitted by newly amended Section 7–20E–9(D) (1996). Chaves County, N.M., Ordinance 35 (June 12, 1996). The County did not submit this amendment to the voters for approval nor was it required by law to do so.

{9} Then came Ordinance 0–067 (Ordinance 67), adopted by the County on August 17, 2000, and adopted again December 13, 2000, authorizing gross receipts tax revenue bonds pursuant to Section 4–62–1(B) for Chaves County courthouse and administrative building construction and rehabilitation projects. Chaves County, N.M., Ordinance 67 (Dec. 13, 2000). Ordinance 67 amended Ordinances 13 and 35, rededicating all future Ordinance 13 revenue and one-half the future

Ordinance 35 revenue (the half not dedicated for indigent patient support), totaling three-sixteenths of one percent, "to pay debt service on or to redeem gross receipts tax revenue bonds" issued for the construction and rehabilitation projects. Upon the bonds being retired, the tax revenue would be dedicated to the County general fund "for general purposes."

{10} Lemire's complaint attacked the validity of Ordinance 67. Lemire contended Ordinance 67 was adopted in violation of the inconsistent-use prohibition of Section 4–62–4(D). That is, the gross receipts tax revenues were now going to be used to pay for building construction and rehabilitation instead of the purposes for which those taxes were originally imposed and dedicated, namely, the road fund and care of indigent patients. Lemire also contended Ordinance 67 was invalid because one of its underlying ordinances, Ordinance 35 as amended in 1996, was void because of an Open Meetings Act notice requirement violation and because the ordinance amendment was not put to voter referendum.

{11} The district court determined that the County's 1996 amendment of the Ordinance 35 original dedication, and the Ordinance 67 amendments of the dedications in Ordinances 13 and 35, were lawful. The court also determined Lemire's challenge to the 1996 amendment to Ordinance 35 was barred by the statute of limitations in NMSA 1978, § 37–1–24 (1941) which, the court found, "requires prompt notice in writing of an objection to a public bodies [sic] action." The district court entered judgment in favor of the County.

### DISCUSSION

{12} On appeal, Lemire repeats his legal challenges to Ordinance 67 that he first raised below. He contends (1) Ordinance 67 is invalid because it violates the inconsistent-use prohibition of Section 4–62–4(D), and (2) Ordinance 67 is invalid because the 1996 amendment to Ordinance 35 is void in that (a) the Board violated the Open Meetings Act when amending Ordinance 35 without adequate notice, and (b) the Board's actions to

Subsections B through L of this section." Section 4–62–1(A).

amend Ordinance 35 violated the referendum provision of Section 7–20E–10(C).

## A. The Inconsistent–Use Prohibition

{13} Throughout this case, the parties have treated the Section 4–62–4(D) inconsistent-use prohibition as the gut issue in the case. Section 4–62–4(D), relating to gross receipts tax revenue bonds, reads:

No ordinance or resolution may be adopted under the provisions of this section that uses as pledged revenues the county gross receipts tax for a purpose that would be inconsistent with the purpose for which that county gross receipts tax revenue was dedicated. Any revenue in excess of the amount necessary to meet all annual principal and interest payments and other requirements incident to repayment of the bonds may be transferred to any other fund of the county.

{14} Lemire contends the use of the first one-eighth increment and one-half of the third one-eighth increment for payment of the courthouse revenue bond debt is inconsistent with the purposes for which those county gross receipts tax revenues were dedicated in Ordinances 13 and 35. The County counters with the argument that Section 4–62–4(D) does not prohibit the use of pledged revenue for a purpose different than that stated in the existing dedication when a county governing body meets and adopts an ordinance amending the existing dedication and uses the pledged revenue in a manner consistent with the amended dedication. According to the County, Section 4–62–4(D) simply means that a revenue stream from a dedication pledging the taxes for a specific purpose cannot be used for an inconsistent purpose unless and until the dedication clause is amended.

{15} Lemire does not quarrel with the general proposition that a county may amend the dedication in a gross receipts tax ordinance by passing a subsequent ordinance. He contends the County cannot rely on this general proposition when it issues revenue bonds. Lemire argues that when revenue bonds are issued based on pledged gross receipts tax revenues as the source for payment of the bond debt, a county cannot use the bond ordinance to amend a dedication clause to use or pledge the gross receipts tax

revenues for a purpose inconsistent with the existing (before-amendment) dedication. More specifically, Lemire argues that Section 4–62–4(D) relates specifically to revenue bonds and is a restriction imposed by the Legislature solely upon the bond ordinance. It is in the section of the statutes specifically confined to revenue bonds A similar statutory section does not appear in the Gross Receipts Act.

{16} As a result, according to Lemire, Section 4–62–4(D) forbids the Ordinance 67 amendment to the Ordinance 13 dedication of a "portion" of the tax revenue for County road purposes, and forbids the Ordinance 67 amendment to the Ordinance 35 dedication of revenue for indigent patient and/or general purposes, because the Ordinance 67 amendments re-dedicate that revenue for payment of revenue bond debt. These Ordinance 67 amendments, Lemire argues, are proscribed by the express language of Section 4–62–4(D) because they constitute the "use[ ] as pledged revenues [of] the county gross receipts tax for a purpose that would be inconsistent with the purpose for which that county gross receipts tax revenue was dedicated." Instead, Lemire would require the County first to repeal the ordinance imposing the tax, and then pass a new tax ordinance with a new dedication specifically pledging the revenue to bond debt repayment, along with a popular vote as required. *See* § 7–20E–11(C) (requiring an election to impose the third one-eighth increment of the county gross receipts tax).

{17} We are not persuaded by Lemire's interpretation of Section 4–62–4(D). Counties are permitted to adopt ordinances that authorize the issuance of gross receipts tax revenue bonds and that designate the source of payment of bond debt. Section 4–62–4(A). By express statutory authorization, the source can be any or all revenue from the first and third one-eighth increments. Section 4–62–1(B). Ordinance 67 is a Section 4–62–4(A) ordinance. The County adopted Ordinance 67 pursuant to Section 4–62–4(A) and, pursuant to Section 4–62–1(B), pledged all of the first and one-half of the third one-eighth increments imposed under the Gross Receipts Act. To effectuate those pledges,

Ordinance 67 repealed parts of prior ordinances inconsistent with Ordinance 67 to the extent of the inconsistency:

> Section 34. *Repealer Clause.* All bylaws, orders, resolutions and ordinances, or parts thereof, inconsistent herewith are hereby repealed to the extent only of such inconsistency. This repealer shall not be construed to revive any bylaw, order, resolution or ordinance, or part thereof, heretofore repealed.

{18} Thus, to the extent the use for bond debt payment of revenue previously dedicated under Ordinance 13 for road fund purposes arguably may have been inconsistent with that prior dedication, Ordinance 67 repealed that dedication and provided by amended dedication that the revenue was to be used to pay bond debt. By repeal, the County eliminated any potential or actual inconsistent use of the revenue that might violate the inconsistent-use prohibition of Section 4–62–4(D). By the amendment, the County used the revenue as authorized in Section 4–62–1(A) and (B).

 {19} In regard to Ordinance 35, we determine the use for bond debt payment of revenue previously dedicated in 1996 for general purposes is not inconsistent with the purpose for which the revenue was dedicated and therefore not in violation of inconsistent-use prohibition of Section 4–62–4(D). Even were there an issue as to inconsistent use, the repeal with amendment in Ordinance 67 was effective to eliminate any inconsistency that may have existed or have been created from the prior dedication in Ordinance 35 and to permit the use of the revenue for bond debt payment. Because Ordinance 67 is valid and effective in regard to the pledge of Ordinance 35 gross receipts tax revenue, regardless of the 1996 amendment of the dedication clause, the issues Lemire raises as to the validity of the 1996 amendment to Ordinance 35, i.e., the voter approval and Open Meetings Act issues, are moot and need not be discussed.

{20} Finally, we are not persuaded by Lemire's arguments regarding the use of the first one-eighth for bond debt payments instead of the reserve fund referred to in Section 7–20E–11(A)–(D). Nothing in Ordinance 13 or any state statute ever "dedicated" revenues to the reserve fund as that term is used in Section 4–62–4(D). By later enactment, the Legislature in Section 4–62–1(B) expressly authorized the County to pledge for bond debt repayment "any or all of the revenue" from the first one-eighth increment which necessarily includes any revenue otherwise eligible for the reserve fund referred to in Section 7–20E–11(A)–(D).

## CONCLUSION

{21} We affirm the district court's judgment in favor of the County.

{22} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, JAMES J. WECHSLER, Judge.